IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

KIMBERLY-CLARK WORLDWIDE, §
INC., §
§
        Plaintiff- §
        counterdefendant, §
§ Civil Action No. 3:09-CV-0488-D
VS. §
§
FIRST QUALITY BABY PRODUCTS, §
LLC, et al., §
§
        Defendants- §
        counterplaintiffs. §

MEMORANDUM OPINION
AND ORDER

    In this patent infringement action, defendants-
counterplaintiffs move on two grounds——the first-to-file rule and
28 U.S.C. § 1404(a)——to transfer this case to the Middle District
of Pennsylvania. Concluding that defendants-counterplaintiffs have
clearly demonstrated that this case should be transferred under
§ 1404(a), the court grants the motion.[1]

I

    Plaintiff-counterdefendant Kimberly-Clark Worldwide Inc. ("K-
C") filed this patent infringement action against defendants-
counterplaintiffs First Quality Baby Products, LLC ("FQBP"),[2] First

_____

    [1]First Quality Baby Products, LLC ("FQBP") also moves to
dismiss under Fed. R. Civ. P. 12(b)(3) for improper venue. In
their motion to transfer and supporting brief, defendants maintain
that, for FQBP, the motion to transfer is in the alternative. Ds.
Mot. 1 n.1; Ds. Br. 1 n.1. Because the court is granting the
motion to transfer, it need not decide FQBP's motion to dismiss.

    [2]FQBP has not filed a counterclaim.

Quality Products, Inc. ("FQP"), and First Quality Retail Services, LLC ("FQRS") (collectively "First Quality") on March 12, 2009. K-C alleges in count I of its complaint that First Quality's new diaper product infringes U.S. Patent No. 5,496,298 ("the '298 Patent"). It asserts in count II that the new diaper product infringes U.S. Patent No. 5,286,543 ("the '543 Patent"). And it avers in counts III, IV, and V that First Quality is infringing three other patents by manufacturing, using, selling, and importing various products (including disposable adult underwear, male guards, incontinence pads, and other diapers). These patents are U.S. Patent No. 5,601,542 ("the '542 Patent"), U.S. Patent No. 5,147,343 ("the '343 Patent"), and U.S. Patent No. 6,702,798 ("the '798 Patent").

On February 25, 2009, two weeks before K-C initiated this lawsuit, FQBP filed suit in the Middle District of Pennsylvania seeking a declaratory judgment that its new diaper product does not infringe the '298 Patent and that the '298 Patent is invalid and unenforceable. Before filing suit, FQBP had manufactured tens of millions of the new diaper in Pennsylvania, offered the new diaper for sale, submitted the new diaper for use testing, and begun limited public distribution.

On March 13, 2009, one day after K-C filed this suit, First Quality filed an amended complaint in the Middle District of Pennsylvania suit matching the claims K-C asserts here. On the same day, K-C filed a motion to dismiss the Middle District of

Pennsylvania action, alleging that there was no subject matter jurisdiction at the time FQBP filed suit.  On June 15, 2009 the Middle District of Pennsylvania granted K-C's motion to dismiss for lack of subject matter jurisdiction.  FQBP filed a notice of appeal on July 15, 2009.

First Quality moves to transfer this action to the Middle District of Pennsylvania, arguing that transfer is warranted under the first-to-file rule or, alternatively, pursuant to 28 U.S.C. § 1404(a).

II

The court will not decide First Quality's motion based on the first-to-file rule.

First, although the parties have analyzed the first-to-file rule under Fifth Circuit authority, Ds. Br. 7-9, P. Br. 5-9, it is unclear whether Fifth Circuit or Federal Circuit precedent controls.  The Federal Circuit applies a "courtesy rule" under which it is "generally guided by the law of the regional 'circuit to which district court appeals normally lie, unless the issue pertains to or is unique to patent law[.]'"  *Amana Refrigeration, Inc. v. Quadlux, Inc.*, 172 F.3d 852, 856 (Fed. Cir. 1999) (citing *Molins PLC v. Quigg*, 837 F.2d 1064, 1066 (Fed. Cir. 1988)).  But the court has found no clear indication that the Federal Circuit would apply regional circuit law in analyzing a transfer under the first-to-file rule.  And it has located at least one instance in

- 3 -

which the Federal Circuit appears not to have applied regional circuit law. *See Elecs. for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347-48 (Fed. Cir. 2005).

Second, assuming Fifth Circuit law applies, it is not entirely clear whether the dismissal of the suit in the Middle District of Pennsylvania affects the application of the first-to-file rule. On the one hand, the putative first-filed case is no longer pending in another district court, so there is no longer another district court to which this court should defer. On the other hand, the dismissal has been appealed. In *Burger v. American Maritime Officers Union*, 170 F.3d 184, 1999 WL 46962 (5th Cir. Jan. 27, 1999) (per curiam) (unpublished table decision), the Fifth Circuit held in an unpublished opinion that

> [a]lthough this circuit has thus far only applied the first-to-file rule when similar actions are pending in two federal district courts and where similar actions are pending in the same federal district, the same policy concerns for avoiding duplicative litigation and comity exist when a similar matter is pending in a federal district court and a federal court of appeals in a different circuit.

*Id.* at *1 (citing cases). In *Burger* the district court granted a dismissal based on the first-to-file rule despite the fact that the first-filed case had already been dismissed. *See id.* (the Florida district court dismissed some claims on July 31, 1996 and the remainder on April 24, 1997, and in late September and early October 1997 the Louisiana district court dismissed all claims

- 4 -

based on first-to-file rule).

Given the absence of briefing of this issue under Federal Circuit law, and the lack of clarity under Fifth Circuit law concerning the impact of the dismissal of the suit in the Middle District of Pennsylvania, the court will decide First Quality's motion under § 1404(a) rather than under the first-to-file rule.

III

Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  "The decision to transfer is made to prevent waste of time, energy, and money and to protect litigants, witnesses, and the public against unnecessary inconvenience and expense." *Bank One, N.A. v. Euro-Alamo Invs., Inc.,* 211 F.Supp.2d 808, 811 (N.D. Tex. 2002) (Fitzwater, J.) (citing *Stabler v. N.Y. Times Co.,* 569 F. Supp. 1131, 1137 (S.D. Tex. 1983)).  The court cannot transfer a case where the result is merely to shift the inconvenience of the venue from one party to the other. *Fowler v. Broussard,* 2001 WL 184237, at *6 (N.D. Tex. Jan. 22, 2001) (Fitzwater, J.) (citing *Enserch Int'l Exploration, Inc. v. Attock Oil Co.,* 656 F. Supp. 1162, 1167 n. 15 (N.D. Tex. 1987) (Fitzwater, J.)).  Moreover,

> [t]he plaintiff's choice of venue is . . .
> entitled to deference, and therefore the party
> seeking transfer has the burden to show good
> cause for the transfer.  The burden on the
> movant is "significant," and for a transfer to
> be granted, the transferee venue must be
> "clearly more convenient than the venue chosen
> by the plaintiff."

*AT & T Intellectual Prop. I, L.P. v. Airbiquity Inc.*, 2009 WL
774350, at *1 (N.D. Tex. Mar. 24, 2009) (Lynn, J.) (footnotes
omitted) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315
(5th Cir. 2008) (en banc) ("*Volkswagen II*")).

The court must decide as a preliminary question "whether the
judicial district to which transfer is sought would have been a
district in which the claim could have been filed."  *In re
Volkswagen AG,* 371 F.3d 201, 203 (5th Cir. 2004) (per curiam)
("*Volkswagen I*"); *Volkswagen II*, 545 F.3d at 312 ("The preliminary
question under § 1404(a) is whether a civil action 'might have been
brought' in the destination venue.").  Once the court resolves this
issue—and K-C does not dispute that this suit could have been
brought in the Middle District of Pennsylvania—the court must in
deciding whether to transfer the case evaluate "a number of private
and public interest factors, none of which are given dispositive
weight." *Volkswagen I*, 371 F.3d at 203 (citing *Action Indus., Inc.
v. U.S. Fid. & Guar. Co.,* 358 F.3d 337, 340 (5th Cir. 2004)).

> The private concerns include: (1) the relative
> ease of access to sources of proof; (2) the
> availability of compulsory process to secure
> the attendance of witnesses; (3) the cost of
> attendance for willing witnesses; and (4) all
> other practical problems that make trial of a
> case easy, expeditious and inexpensive. The
> public concerns include: (1) the
> administrative difficulties flowing from court
> congestion; (2) the local interest in having
> localized interests decided at home; (3) the
> familiarity of the forum with the law that
> will govern the case; and (4) the avoidance of
> unnecessary problems of conflict of laws [or]
> the application of foreign law.

*Id.* (citations and quotation marks omitted; bracketed material added).[3]   "Although [these] factors are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at 315.  First Quality must establish "good cause" for transferring the case, meaning that, "in order to support its claim for a transfer, [it] must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Volkswagen II*, 545 F.3d at 315 (brackets in original) (quoting § 1404(a)).

---

[3]In reviewing a district court's ruling on a motion to transfer pursuant to § 1404(a), the Federal Circuit applies the law of the regional circuit. *Storage Tech. Corp. v. Cisco Sys., Inc.*, 329 F.3d 823, 836 (Fed. Cir. 2003).  The Federal Circuit applies the *Volkswagen II* factors in evaluating a § 1404(a) decision made by a district court in the Fifth Circuit.  *See In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) (addressing petition for write of mandamus) (applying Fifth Circuit law and *Volkswagen II*, 545 F.3d at 315).

IV

The court turns initially to the private interest factors.

A

The first private interest factor concerns the relative ease of access to sources of proof.

1

First Quality has adduced evidence that most of its documentation regarding the design, development, and manufacture of its products is located in Pennsylvania. The documents of FQBP and FQP are located primarily in the Middle District of Pennsylvania, and the documents of FQRS are located primarily in the Eastern District. Anthony Silwanowicz ("Silwanowicz"), Director of Product Development for FQP, who is also responsible for product development of relevant products produced by FQRS, avers that "[m]ost, if not all, documents relevant to, and personnel involved in, the design, development, marketing, and manufacture of the FQB products identified by [K-C], and listed above, are located in McElhattan, Pennsylvania, where approximately 750 people are employed." Ds. App. 3. "Most, if not all, documents relevant to, and personnel involved in, the design, development, marketing, and manufacture of the FQRS products identified by [K-C], and listed above, are located in King of Prussia, Pennsylvania, where approximately 570 people are employed." *Id*. According to Susan O'Connell ("O'Connell"),

- 8 -

Director of Product Development for FQBP, "[a]ll of the documents related to the design, development, manufacture, and marketing of [First Quality's accused new baby diaper product] are maintained in Pennsylvania." *Id.* at 6. "All of the documents related to the design, development, and marketing of the Target Diapers [accused of infringing the '343 Patent] are maintained in Pennsylvania." *Id.* at 7. "All of the documents related to the manufacture of the Target Diaper [accused of infringing the '343 Patent] are located either in Pennsylvania or in Georgia." *Id.* The Target Diaper is manufactured in Macon, Georgia, and some documents related to its manufacture are located there. *See id.*[4] First Quality contends that K-C's documents are likely located in Neenah, Wisconsin. It bases this contention on the assignments of the patents-in-suit, all of which identify an address for K-C in Neenah, and the fact that the attorneys who prosecuted the patents used the same Neenah address. First Quality therefore maintains that none of the sources of proof can be directly accessed in the Northern District of Texas, but many can be in Pennsylvania.

---

[4]The facilities and equipment used to manufacture the accused products are also located primarily in Pennsylvania, with one facility in Macon, Georgia. Ds. App. 3, 5, and 7. It is not clear from the record, however, that the facilities and equipment are themselves sources of proof in this case, so the court will not specifically consider them in evaluating where the case should be transferred. The location of these facilities does have relevance, however, concerning the second public interest factor (the local interest in having localized interests decided at home), and the court will consider this evidence in that context.

K-C argues that the relative ease of access to sources of
proof does not favor transfer because the relevant sources of proof
are located throughout the country and are equally accessible to
both parties in either jurisdiction.

2

The court concludes that this factor favors transferring the
case.  "The Fifth Circuit [has] held that despite technological
advances that [have] made the physical location of documents less
significant, the location of sources of proof remains a meaningful
factor in the transfer analysis."  *AT & T Intellectual Prop.*, 2009
WL 774350, at *2; *see Volkswagen II*, 545 F.3d at 316 ("[T]he
sources of proof requirement is a meaningful factor in the
analysis." (citing *Volkswagen I*, 371 F.3d at 203)).  Much of the
relevant evidence can be found in Pennsylvania, where substantial
aspects of the allegedly infringing conduct took place.
Pennsylvania is the location where all but one of the allegedly
infringing products were conceived, designed, and manufactured.
Most of First Quality's documentation regarding its design,
development, and manufacture of the allegedly infringing products
is located in Pennsylvania.  The one exception is the "Target
Diaper," which is manufactured in Macon, Georgia.  But all of the
documents related to the design, development, and marketing of the
Target Diaper are maintained in Pennsylvania, and some documents
related to the manufacture of the Target Diaper are located in

Pennsylvania.

K-C maintains that its documents are more accessible in this district because K-C's corporate headquarters are located here. But K-C does not identify any specific proof, or even categories of proof, that are located at its headquarters. *See* P. Br. 11 (arguing that "K-C's corporate headquarters are in the Northern District [of Texas], making documents at K-C's headquarters more accessible," but not identifying the documents, even by general nature or type, or specifying other sources of proof). Although First Quality, not K-C, has the burden of proof on this motion, the absence of such specificity is telling. *See AT & T Intellectual Prop.*, 2009 WL 774350, at *4 (holding that this factor slightly favored transfer where defendant showed that relevant documents resided in transferee district and plaintiff did not show that any relevant documents were located in the Northern District of Texas).

K-C contends that access to infringing products is relatively easy regardless of venue because the accused products are distributed and sold by nationwide retailers, and that the accused products are sold in this district. While this is undoubtedly true, it also means that these sources of proof are equally available in the Middle District of Pennsylvania, so that if the case is transferred, these sources (the accused products) and many other sources of proof will all be located in one forum.

K-C also posits that First Quality has multiple manufacturing

- 11 -

facilities and offices located in Pennsylvania, New York, and Georgia, so there is no single location that has easy access to all sources of documentary proof. It asserts that while manufacturing occurs in three locations in Pennsylvania, they are located in different judicial districts, and that a fourth location is in Georgia. But the fact remains that the Middle District of Pennsylvania is more convenient for sources of proof in the state of Pennsylvania (regardless of the judicial district in which the proof is found). And First Quality has shown that the design, development, and marketing documents for the accused product manufactured in Georgia (the Target Diaper) are maintained in Pennsylvania, and that development activities are managed from Pennsylvania. In fact, K-C's assertion that "[t]he relevant sources of proof are located throughout the country and are equally accessible to both parties in either jurisdiction[,]" P. Br. 11, coupled with its apparent inability to identify specific sources of proof found at its headquarters, suggest the possibility that its principal place of business for matters relevant to this dispute is actually in Wisconsin rather than in this district. As First Quality points out, all of the patents-in-suit identify a Neenah, Wisconsin address for K-C, *see* Compl. Exs. A-E, and the attorneys who prosecuted the patents also used the same Neenah address.

Accordingly, this factor supports transferring the case. *See, e.g., In re TS Tech USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008)

(holding that where all the physical and documentary evidence was far more conveniently located near Ohio venue, district court erred in not weighing this factor in favor of transfer).

                                    B

        The second factor concerns the availability of compulsory process to secure the attendance of witnesses.

        First Quality concedes in its motion that, although certain categories of third-party witnesses, such as raw material suppliers, customers, and individuals (including inventors or prosecuting patent attorneys who might have left the employ of the parties) might be considered, there is currently nothing to suggest that these witnesses would be unwilling to testify. And First Quality has not identified any witnesses for whom compulsory process will be needed. It admits that this factor is at best neutral. In response, K-C cites various reasons for contending that this factor does not weigh in favor of transferring the case. It does not clearly maintain, however, that this factor weighs in favor of retaining the case in this district.

        The court concludes that this factor is neutral. While it does not support transferring the case, it likewise does not support retaining the case here.

C

The third factor is the cost of attendance for willing witnesses.

1

First Quality maintains that, although a limited number of its witnesses may be located in the Eastern District of New York and in Macon, Georgia, *see* Ds. App. 3 and 7, most of its anticipated witnesses are located in Pennsylvania.  According to O'Connell, "[a]ll of the people involved in the design, development, manufacture, and marketing of [First Quality's accused new baby diaper product] are located in Pennsylvania."  Ds. App. 6. Silwanowicz avers that "[m]ost, if not all, . . . personnel involved in[ ] the design, development, marketing, and manufacture of the FQB products identified by [K-C], and listed above, are located in McElhattan, Pennsylvania[.]"  Ds. App. 3.  And "[m]ost, if not all, . . . personnel involved in[ ] the design, development, marketing, and manufacture of the FQRS products identified by [K-C], and listed above, are located in King of Prussia, Pennsylvania[.]"  *Id*.  First Quality contends that many of K-C's likely witnesses are believed to be in Wisconsin, and it points out that the declarant in support of K-C's motion to dismiss the FQBP Pennsylvania action was located in Neenah, Wisconsin.  It asserts that Dallas is located approximately 1,200 miles from central Pennsylvania, where most of First Quality's witnesses are located;

Dallas is located approximately 900 miles from Neenah, Wisconsin, where most of K-C's witnesses are located; and Neenah is located about 650 miles from Harrisburg, Pennsylvania, meaning that, with a few possible exceptions, the witnesses for both parties are closer to the Harrisburg, Pennsylvania courthouse than to the Dallas courthouse.

K-C counters that the potential witnesses are located throughout the country. It asserts that its witnesses are located in this district and in Wisconsin. Relying on the premise that the court must primarily consider the convenience of key witnesses, it identifies Thomas Mielke, Esquire ("Mielke"), its general counsel, who many years ago prosecuted the '298, '542, and '343 Patents, and who currently works at K-C's corporate headquarters in a Dallas suburb. K-C contends that the decentralized nature of the location of other potential witnesses would merely reallocate the inconvenience and costs to potential witnesses if the case is transferred; that First Quality has failed to identify a single Pennsylvania witness by name and address; that First Quality has not identified any third-party witnesses whose cost of attendance would be reduced by transferring the case; that another court has recognized that a great number of witnesses will be experts who could come from anywhere; and that the speculative nature of the witnesses to be called at trial, coupled with the decentralized nature of the location of all potential witnesses, weighs in favor

- 15 -

of retaining the case in this forum.

2

The court finds that this factor is neutral.  On the one hand, First Quality has established at a general level that the persons from whom its witnesses are likely to be drawn are largely found in Pennsylvania; that the Middle District of Pennsylvania is geographically closer to Neenah, Wisconsin than is Dallas; and that there is a possibility that most of the willing witnesses in this case will come from Wisconsin and Pennsylvania.  On the other hand, K-C correctly points out that First Quality has not specifically identified a single *witness* by name and address.  In fact, First Quality's evidence relates to the location of *personnel*, not to the location of *witnesses*.  Since this factor focuses on the cost of attendance for willing *witnesses*, this distinction is material.  This court has consistently required that parties seeking a transfer under § 1404(a) "identify the 'key witnesses and the general content of their testimony.'"  *Sargent v. Sun Trust Bank, N.A.*, 2004 WL 1630081, at *3 (N.D. Tex. July 20, 2004) (Fitzwater, J.) (quoting *Bank One*, 211 F.Supp.2d at 812).

D

Regarding all other practical problems that make trial of a case easy, expeditious, and inexpensive, the parties agree that this factor is neutral, *see* Ds. Br. 13; P. Br. 14, and the court need not address it in detail.

V

Having addressed the private factors, the court now turns to the public factors.

A

The first public factor is the administrative difficulties flowing from court congestion. First Quality contends that this factor is neutral because transferring the case will not cause procedural delays, and the differences in the median time from filing to trial have reduced significance because patent cases have special rules and procedures that diminish the importance of this statistic.

Citing the Federal Judicial Caseload Statistics, K-C relies on the fact that cases in this district reach trial more quickly than do those in the Middle District of Pennsylvania (24 months compared to 31.2 months). K-C also speculates that the adoption of local patent rules in the Northern District of Texas[5] may explain the shorter time to trial, particularly since the Federal Judicial Caseload Statistics reflect 195 patent cases pending in this district versus 33 in the Middle District of Pennsylvania, which has not adopted similar specialized procedures for litigating patent cases.

---

[5]In Miscellaneous Order No. 62 (Apr. 2, 2007), the Dallas Division of this court adopted patent rules on a pilot basis. These rules do not apply outside the Dallas Division unless an individual judge opts to follow them.

- 17 -

The court concludes that this factor is neutral because the statistics on which K-C relies relate to cases generally rather than to patent cases specifically.  *See, e.g., Lear Corp. v. TS Tech USA Corp.*, 2008 U.S. Dist. LEXIS 105072, at *8 (E.D. Tex. Sept. 10, 2008) (concluding that this factor was neutral where statistics did not provide data for patent cases).  And the court has no basis to find that the Dallas Division's adoption of special patent rules supports the finding that this case will be tried here at a materially sooner point in time than it would be tried in the Middle District of Pennsylvania.

B

The second public factor is the local interest in having localized interests decided at home.

1

First Quality contends that this litigation is truly one of local interest in the Middle District of Pennsylvania, and that the subject matter has no connection to Texas.  It cites evidence that FQBP, FQRS, and FQP have facilities in Pennsylvania that manufacture the accused products; FQBP recently built a $200 million facility in that district for manufacturing its new diaper; the new facility employs over 200 people; and the complete design and development of the new diaper took place in Pennsylvania. First Quality also relies on evidence that FQP has a manufacturing facility in the Middle District of Pennsylvania, and all of FQP's

accused products are manufactured in McElhattan, Pennsylvania.  And it points to proof that, except for the Target diaper, FQRS manufactures all of its accused products at a facility in King of Prussia, Pennsylvania.  First Quality posits that Texas is only one of K-C's many places of business and is likely not the most relevant one.

K-C responds that both the residents of the Northern District of Texas and the residents of this district who are employees at K-C's corporate headquarters have an interest in litigating this lawsuit here, and that K-C's choice of forum should be given greater deference because K-C resides in this district.  K-C maintains that First Quality has failed to cite any relevant case in which a court granted a § 1404(a) motion where the request was made to transfer the case out of the district in which the plaintiff's headquarters were located.  K-C cites as an example the interest of Mielke, its general counsel, who was involved in prosecuting the '298, '542, and '343 Patents.  It argues that First Quality's local interests are divided among the Middle District of Pennsylvania, the Eastern District of Pennsylvania, and the Middle District of Georgia.  And it contends that no one location has greater weight than another, and that because the transferee venue is not clearly more convenient than the venue K-C has chosen, K-C's choice should be respected.

2

The court holds that this factor favors transferring the case. All three defendants have facilities in Pennsylvania that make the accused products. FQBP recently built a $200 million facility in the Middle District of Pennsylvania that employs over 200 people, and the new diaper was designed and developed in Pennsylvania. FQP has a manufacturing facility in the Middle District of Pennsylvania, and all of its accused products are manufactured in McElhattan, Pennsylvania, where approximately 750 people are employed. Except for the Target diaper, FQRS manufactures all of its accused products at a facility in King of Prussia, Pennsylvania, where approximately 570 people are employed.

Although the court defers to K-C's choice of forum, *e.g.*, *AT & T Intellectual Property*, 2009 WL 774350, at *1 ("The plaintiff's choice of venue is not properly considered as an independent factor in the analysis, but it is entitled to deference"), and it recognizes that K-C's corporate headquarters are located in this district, this case is different in that the location of K-C's most relevant "local interest" appears to be Neenah, Wisconsin. This is the address used for the assignments of the patents-in-suit and for the attorneys who prosecuted the patents. K-C does not explicitly argue otherwise. By contrast, the only local employee who K-C specifically alleges to have an interest in this case is Mielke, its general counsel. So while it is logical to conclude that the

outcome of this litigation will have some effect in this district, e.g., on K-C's bottom line, it appears from the record that the effect of successfully prosecuting the patents-in-suit has a more localized interest for K-C in Neenah, Wisconsin.

But for First Quality, the local interest is substantially found in the Middle District of Pennsylvania or, to some extent, in an adjacent district in Pennsylvania. Setting aside the one facility located in Macon, Georgia, it is the residents of Middle District of Pennsylvania or an adjacent Pennsylvania district who have a significant interest in whether local manufacturers will be able to continue producing products conceived, designed, developed, and manufactured locally in facilities that employ its denizens and impact the local economy. Moreover, as explained above, Pennsylvania is likely to be more convenient with respect to sources of proof in this case. These reasons all support the conclusion that the Middle District of Pennsylvania has a local interest in having this litigation adjudicated in that district. *See id.* at *6 (holding that residents of the Western District of Washington had local interest in outcome of case where defendant was based there and most, if not all, of its witnesses, evidence, and business operations were there, and finding that this factor weighed in favor of transfer).

This factor weighs in favor of transferring the case.

- 21 -

C

Both parties agree that the third and fourth public factors—familiarity of the forum with the law that will govern the case and avoidance of unnecessary problems of conflict of laws—are neutral. Ds. Br. 16; P. Br. 16. Accordingly, the court need not address these factors in detail.

VI

Considering all the relevant factors, the court holds that the Middle District of Pennsylvania is clearly more convenient when compared to the Northern District of Texas. The relative ease of access to sources of proof supports transferring this case. Based on the record developed so far, more pertinent evidence is likely to be located there than anywhere else, and certainly more there than in this district. And the Middle District of Pennsylvania has a substantial local interest in litigating the case, whereas this district's interest arises because K-C's corporate headquarters are located here, and K-C's interest is more localized in Neenah, Wisconsin. None of the remaining factors weighs against transferring the case.

Moreover, from the record developed so far, it appears that the "convenience of parties and witnesses" and the interest of justice are most accurately assessed by analyzing the convenience of this district compared to Neenah, Wisconsin (for K-C and its witnesses) and to the Middle District of Pennsylvania (for First

Quality and its witnesses).[6]  If the case is litigated in this
district, K-C's Neenah witnesses will be required to travel farther
to this forum than to the Middle District of Pennsylvania, and
First Quality's witnesses will be required to travel farther to
this forum than to Neenah (or, of course, to remain in their home
district).  If the case is transferred to the Middle District of
Pennsylvania, at least First Quality will be more convenienced.  If
the case remains in this district, both sides will be
inconvenienced.  (K-C does not ask, of course, that the case be
transferred to Neenah.)  It is error for this court to disregard
these differences in distance.  *See In re TS Tech USA*, 551 F.3d at
1320 (citing *Volkswagen I*, 371 F.3d at 204-05, and holding that it
was clear error for district court to disregard Fifth Circuit "100-
mile rule" where all the identified key witnesses were in Ohio,
Michigan, and Canada, and witnesses would need to travel
approximately 900 more miles to attend trial in Texas versus Ohio).

    The same analysis applies when considering the evidence that
is likely to be produced during discovery and at trial.  Apart from
testimony and supporting evidence of expert witnesses——who may come
from anywhere——the record indicates that it is probable that the
bulk of the evidence will be located in Neenah, Wisconsin or in

_____

         [6]To the extent this analysis does not fit precisely within a
particular factor, it can still be considered because "[a]lthough
[the] factors are appropriate for most transfer cases, they are not
necessarily exhaustive or exclusive." *Volkswagen II*, 545 F.3d at
315.

- 23 -

Pennsylvania (and, to some extent, in Georgia and New York) rather than in Dallas.  It would therefore promote the convenience of the parties and the witnesses, and be in the interest of justice, to litigate the case in a forum where substantial evidence will be found rather than in one in which there apparently is a relative paucity of proof.

If the court were to deny First Quality's motion on this record, it would not simply be giving deference to K-C's choice of venue; it would effectively be giving this choice controlling weight.  This is so because, apart from being the location of K-C's corporate headquarters, this district appears to have little to offer in terms of promoting the convenience of the parties and witnesses.  For the convenience of the parties and witnesses, and in the interest of justice, this case should be litigated in the Middle District of Pennsylvania or perhaps in the Eastern District of Wisconsin, but not here.

This decision does not signal that K-C can never bring a patent infringement lawsuit in this district, where its corporate headquarters are located.  Section 1404(a) motions are intensely factual.  *E.g., Thayer/Patricof Educ. Funding, L.L.C. v. Pryor Res., Inc.*, 196 F.Supp.2d 21, 32 (D.D.C. 2002) ("A motion to transfer under 28 U.S.C. § 1404(a) requires a factually intensive analysis to determine which forum is more appropriate.").  Their outcome ultimately turns on whether the moving party has clearly

- 24 -

demonstrated that the case should be transferred for the convenience of the parties and witnesses and in the interest of justice. *See Volkswagen II*, 545 F.3d at 315.   Today's ruling should therefore be seen as confined to the facts of this case and to First Quality's ability to make the required clear showing that a § 1404(a) transfer is warranted.

\*     \*     \*

First Quality's April 2, 2009 motion to transfer is granted, and this case is transferred to the Middle District of Pennsylvania.   The clerk of court shall effect the transfer according to the usual procedure.[7]

**SO ORDERED.**

August 26, 2009.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE

---

[7]Because the court has not relied on First Quality's supplemental memorandum in support of its motion to transfer, the court denies First Quality's July 9, 2009 motion for leave to file a supplemental memorandum as moot.